**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

**DOMESTIC LINEN SUPPLY CO., INC.,**    :    **CIVIL ACTION**
                          :
           **Plaintiff,**          :
                          :
                          :
           **v.**                :      **No. 17-3448**
                          :
**FOULKE MANAGEMENT CORP.,**        :
                          :
           **Defendant.**       :
_____ :

**<u>ORDER</u>**

       **AND NOW**, this 21st day of August, 2018, upon consideration of Defendant's "Motion to Dismiss Plaintiff's Complaint Pursuant to 12(b)(1) and 12(b)(2)" (Doc. No. 15) and Plaintiff's Response thereto (Doc. No. 16), I find as follows:

**<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**[1]

1. Plaintiff Domestic Linen Supply Co. Inc. ("Domestic PA"), a Pennsylvania corporation, filed this lawsuit against Defendant Foulke Management Corp. ("Foulke") on August 2, 2017. Domestic PA's Complaint alleges that Foulke breached three contracts to purchase store uniforms from Domestic PA for Foulke's car dealerships. Domestic PA seeks damages for breach of contract (Count I), or, alternatively, an order compelling arbitration of that claim (Count II). (Compl. ¶¶ 1, 11-13, 32-35, 44.)

2. Previously, on October 7, 2013, Foulke filed a lawsuit in the New Jersey Superior Court, Law Division, against a New Jersey corporation that is also named Domestic Linen Supply Co. Inc. ("Domestic NJ"), alleging breach of contract, among other theories.

_____

[1] Except where noted, the parties agree on the following outline of the litigation history.

Domestic NJ defended on two grounds: that it was not a party to any contract with Foulke, or, alternatively, that any contract it did have required that all disputes be settled by arbitration. The Law Division dismissed Foulke's suit on the second ground, directing Foulke and Domestic NJ to proceed to arbitration. (Compl. ¶ 24; Mot., Exs. C, D, & E, Doc. Nos. 15-7, -8, & -9.)

3. Subsequently, Domestic PA initiated arbitration proceedings against Foulke. Foulke then filed a second lawsuit in the Law Division, claiming that it had no contract with Domestic PA and seeking to enjoin Domestic PA from attempting to arbitrate. As before, Foulke argued that its contract was with Domestic NJ, not Domestic PA. The Law Division, treating the prior dismissal as collateral estoppel on the identity of Foulke's contracting partner, granted an injunction restraining Domestic PA from attempting to arbitrate any dispute with Foulke. (Compl. ¶¶ 26-28; Mot., Exs. G & H, Doc. Nos. 15-11 & -12.)

4. Domestic PA then appealed to the New Jersey Superior Court, Appellate Division, which vacated both trial court orders, consolidated the cases, and remanded for fact-finding as to the identity of the contracting parties. Foulke Mgmt. Corp. v. Domestic Linen Supply Co., No. A-0752-14T2, 2016 WL 936943, at *6 (N.J. Super. Ct. App. Div. Mar. 14, 2016). In so doing, the Appellate Division directed that "[t]he parties are restrained from pursuing arbitration until the issue of the proper parties is resolved." Id. Litigation in the Law Division remains ongoing as of the time Foulke filed the present Motion. (Mot., Doc. No. 15-3, at 1.)

5. Foulke has moved to dismiss Domestic PA's Complaint on numerous grounds: that the Court lacks personal jurisdiction over Foulke, that the Court should abstain from exercising subject-matter jurisdiction under the doctrines of Colorado River, Younger,

2

<u>Burford</u>, <u>Brillhart</u>, and <u>Rooker</u>-<u>Feldman</u>, and that Domestic PA's claims are barred by collateral estoppel. For the reasons stated below, I will deny the Motion.

## LEGAL STANDARD

6. When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), I must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." <u>See</u> <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." <u>Id.</u> A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." <u>Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.</u>, 819 F.2d 434, 437 (3d Cir. 1987).

7. Rule 12(b)(1) allows a party to move for dismissal based on a lack of subject-matter jurisdiction. A moving party may challenge subject-matter jurisdiction either facially or factually. <u>See</u> <u>Mortensen v. First Federal Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack, as here, the court may weigh evidence to satisfy itself that jurisdiction exists, and the plaintiff bears the burden of proving that it does. <u>Id.</u>

8. Finally, to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." <u>Id.</u> To determine the

sufficiency of a complaint under <u>Twombly</u> and <u>Iqbal</u>, a court must take the following three steps: (1) the court must "take note of the elements a plaintiff must plead to state a claim"; (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." <u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221 (3d Cir. 2011) (alterations and citations omitted).

## **DISCUSSION**

<u>Personal Jurisdiction</u>

9. Foulke argues that Domestic PA's Complaint should be dismissed because the Court lacks personal jurisdiction over Foulke. Domestic PA counters that its contracts to supply uniforms to Foulke's car dealerships are sufficient to establish the necessary ties between Foulke and Pennsylvania.

10. When evaluating a motion to dismiss for lack of personal jurisdiction, a court must decide whether jurisdiction over the defendant is consistent with the laws of the forum state and with the Due Process Clause of the United States Constitution. <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 436 (3d Cir. 1987). In Pennsylvania, the relevant statute permits a court to exercise personal jurisdiction to the extent permitted by due process, and so the two inquiries are the same. 42 Pa. Cons. Stat. § 5322(b).

11. Personal jurisdiction is consistent with due process if the defendant has sufficient contacts with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326

U.S. 310, 316 (1945). Specific personal jurisdiction, as asserted here, requires that the events underlying the lawsuit be the product of the defendant having purposefully directed its activities at the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985). A contract alone will not show such purposeful direction, but an ongoing relationship involving "prior negotiations and contemplated future consequences" in the forum state will suffice. Id. at 489.

12. Here, Domestic PA alleges that it and Foulke executed three five-year contracts, renewed once, to supply uniforms to Foulke's businesses in New Jersey, and offers as support three documents that it claims to be those contracts. (Compl. ¶¶ 17-20; Id., Ex. A.) The documents call for notices to be sent to Philadelphia, for disputes to be venued in Philadelphia, for the law of Pennsylvania to govern, and for disputes over $10,000 to be arbitrated in Pennsylvania. (Id., Ex. A, ¶¶ 15, 18, 21.) Plaintiff contends that Foulke sent payments to Domestic PA's office in Pennsylvania, and attaches copies of what purport to be invoices showing a Philadelphia address. (Compl. ¶ 42; Resp., Ex. B.)

13. These facts are sufficient to make out a prima facie case that Foulke had an ongoing relationship with Domestic PA in Pennsylvania, with future consequences to occur in this state. I may thus exercise personal jurisdiction over Foulke, and will deny Foulke's Motion to dismiss for lack of personal jurisdiction.

Colorado River Doctrine

14. Generally, "the pendency of an action in . . . state court is no bar to proceedings concerning the same matter in . . . Federal Court." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). In rare circumstances, a federal court may decline jurisdiction over a matter pending in state court if doing so is wise in light of the

inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, the relative progress of the state litigation, and a lack of federal issues in the case. Id. at 818-19; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983). The balance is "heavily weighted in favor of the exercise of jurisdiction." Cone, 460 U.S. at 16.

15. Of these factors, only one is relevant here: the New Jersey Superior Court has handled the parties' dispute for nearly five years, and deference to that court might be convenient. However, the two litigations are not identical, and only the present one includes Domestic PA's claim for breach of contract. Moreover, federal policy favors allowing contracting parties to enforce agreements to arbitrate in federal court notwithstanding parallel state court litigation. Cone, 460 U.S. at 19. These facts show at most that abstention might be expedient, but do not present the exceptional circumstances necessary to abstain under Colorado River. Accordingly, Colorado River does not provide a ground for dismissing the Complaint.

Younger Doctrine

16. Younger abstention concerns the propriety of enjoining state proceedings. Younger v. Harris, 401 U.S. 37, 52-53 (1971). Plaintiff's breach of contract claim does not seek to enjoin state proceedings, and so Younger does not apply. Although Plaintiff does indicate that it would seek to enjoin the state court from interfering with any arbitration ordered by this Court, it is premature to decide whether such relief would be appropriate. (Compl. ¶ 45.) There is thus no basis to dismiss under Younger.

Burford Doctrine

17. Burford abstention protects "the rightful independence of state governments in carrying out their domestic policy." Burford v. Sun Oil Co., 319 U.S. 315, 317-19 (1943). It is applicable only where the relief sought in federal court is discretionary, and does not apply to mandatory claims for damages. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996). Foulke has not identified any New Jersey policy that would be threatened by the present litigation, and the relief Domestic PA seeks is mandatory, not discretionary. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)). As such, Burford does not apply.

Brillhart Doctrine

18. Brillhart abstention applies only to actions for declaratory judgment, and thus it, too, does not apply. Brillhart v. Excess Ins. Co., 316 U.S. 491, 494-95 (1942).

Rooker-Feldman Doctrine

19. The Rooker-Feldman doctrine holds that a federal district court may not review a state court decision. Rooker v. Fid. Tr. Co., 263 U.S. 413, 416 (1923); 18B Wright & Miller, Federal Practice § 4469.1 (2018). It does not prevent a federal court from adjudicating the same factual or legal matters that underlie a parallel state court action, nor does it dictate that a federal court must draw conclusions identical to those the state court would draw. Allen v. Debello, 861 F.3d 433, 438 (3d Cir. 2017). Plaintiff is not asking this Court to

review a state court decision, nor has the litigation in New Jersey so far produced a decision. Accordingly, <u>Rooker</u>-<u>Feldman</u> does not apply.

<u>Collateral Estoppel</u>

20. Federal courts afford state court judgments the same preclusive effect that they would command in the state that rendered them. 28 U.S.C. § 1738. Here, Foulke asserts that Domestic PA's claims are collaterally estopped by a decision of the New Jersey Superior Court, and so New Jersey collateral estoppel law applies. New Jersey law, in turn, holds that a decision will not have preclusive effect unless it is a final judgment on the merits. <u>In re Estate of Dawson</u>, 641 A.2d 1026, 1034-35 (N.J. 1994). Here, the two trial court decisions have been vacated, and the Appellate Division was clear in its opinion that it was not deciding whether a contract existed between Foulke and Domestic PA. <u>See</u> <u>Foulke Mgmt. Corp.</u>, 2016 WL 936943, at *6. There is thus no final judgment and no basis for collateral estoppel.

**WHEREFORE**, it is hereby **ORDERED** that Foulke's Motion to Dismiss is **DENIED**.

**BY THE COURT:**

**/s/ Mitchell S. Goldberg**
_____

**MITCHELL S. GOLDBERG, J.**